UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JUAN PINEDA,                              :
                  Plaintiff,          :
                                        :          **OPINION AND ORDER**
v.                                        :
                                        :          13 CV 6821 (VB)
BYRNE DAIRY, INC., and MICHAEL            :
GANNON,                                   :
                  Defendants.        :
------------------------------------------------------------x

Briccetti, J.:

Plaintiff Juan Pineda brings this Title VII action against his former employer, Byrne Dairy, Inc. ("Byrne"), for discrimination, hostile work environment, and retaliation based on national origin.

Byrne has moved for summary judgment.  (Doc. #64).

For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, affirmations with supporting exhibits, and statements of material facts pursuant to Local Civil Rule 56.1, which reflect the following factual background.

Plaintiff was born in El Salvador.  From January 2008 until his termination on June 28, 2011, he was employed by Byrne, a producer and distributor of dairy products.  Plaintiff was a driver responsible for transporting and delivering Byrne's products.

I.      Supervisor Michael Gannon[1]

Michael Gannon was hired as a Depot Supervisor in November 2009 for Byrne's
Newburgh depot.  Gannon was responsible for supervising drivers, including plaintiff.

The parties dispute Gannon's actions towards plaintiff and other Hispanic drivers
compared to non-Hispanic drivers.  Plaintiff contends Gannon made derogatory statements,
including a comment in May 2011 to the effect of, "[y]ou guys need service on cutting grass?
Because I have a Mexican that works for food, because that is all what Hispanics can do, after
crossing the bo[]rder."  (Parker Aff. Ex. 9 at 114).  Plaintiff alleges Gannon also (i) accused
plaintiff and his brother of driving infractions they did not commit, (ii) arranged to have
plaintiff's trailers loaded in a way that made them difficult to unload, and (iii) changed plaintiff's
vacation schedule in preference to a non-Hispanic employee.

Byrne denies each of these contentions, except Gannon admits he changed plaintiff's
vacation to accommodate another driver's need to visit a sick family member.

II.     April 2011 Route Reassignment and Subsequent Complaint

In April 2011, Byrne lost customer accounts affecting several drivers' routes, including
plaintiff's route.  Plaintiff was reassigned to a lower-paying route that required longer hours.
Two drivers and an assistant supervisor were terminated.

Byrne's Human Resources Manager conducted interviews to gauge employees' reactions
to the changes.  The manager's notes reflect plaintiff "was very happy he still has a job," and he
"[t]hanked [Byrne] for keeping him."  (Parker Aff. Ex. 11 at 5).

At some point in April 2011, plaintiff called human resources to complain about his new
route reassignment.  Plaintiff alleges he also complained that Gannon was treating him and his

---

[1]      Plaintiff initially sued Gannon, but he was later dismissed as a defendant.  (Doc. #14).

brother less favorably than non-Hispanics.  The human resources employee who received the call

denies receiving a discrimination complaint and recalls plaintiff complaining about his route

assignment only.  The employee told Byrne's Human Resources Manager about plaintiff's call,

who in turn informed Gannon that plaintiff had complained about his route assignment.[2]  No

Byrne employee acknowledges receiving a discrimination complaint from plaintiff in April 2011.

III.   June 2011 Termination

     In or around June 2011, Byrne lost a customer account for school districts in the

Newburgh area.  As a result, Byrne eliminated certain delivery routes, including plaintiff's.

Around the same time, however, two driving positions opened up at the Newburgh depot due to

"transfer and normal attrition."  (Def.'s 56.1 ¶ 4).

     Of the drivers affected by the June 2011 route elimination, only plaintiff was laid off.

One driver was transferred to Byrne's Albany depot, where he had prior experience.  Two other

drivers were reassigned to the available delivery routes.  These drivers are non-Hispanic.

A.   Byrne's Reduction-in-Force Policies

     The parties dispute how Byrne's policies dictate which drivers will be laid off due to a

reduction-in-force ("RIF").  Byrne's Human Resources Guidebook, in pertinent part, states the

following:

> Reductions of workforce levels shall be made on the following
> criteria: . . .
> • Based upon departmental/location evaluations and revised staffing
>   levels, as directed by the Company's management team,
>   management shall identify jobs and/or individuals per the
>   following guidelines:
>     • those in nonessential functions

---

[2]    Upon receiving notice of plaintiff's complaint, Gannon travelled plaintiff's route with him and made changes to the route in an attempt to make it more efficient.  (Parker Aff. Ex. 9 at 104-5).  Plaintiff testified his route got worse as a result.  (Id. at 107).

- • those with lesser experience in critical positions
  - • those with the lowest overall performance rating on the most recent performance evaluation, or those operating under a disciplinary action
- • In the situation of nonessential functions and in the event that two or more individuals are assigned to a job affected by a reduction of workforce levels, then, if performance is equal, the associate with the least length of Company service shall be subject to the reduction.
- • The Company may look at reductions based on loss of a customer and the impact of such loss on a location or line of production, or performance, or length of service. The Company reserves the right to decide on the reduction method at any given time, so long as it is consistent in its application during a specific round of reductions for a given functional area.

(Mazza Aff. Ex. 3 at 1-2).

Under this policy, plaintiff argues, length of service is a consideration when making RIF decisions. Plaintiff worked as a driver for Byrne two-and-a-half years longer than one of the reassigned, non-Hispanic drivers, and four months longer than the other reassigned, non-Hispanic driver. (Mazza Aff. Ex. 6). The parties agree Byrne did not take plaintiff's longer length of service into account in choosing to terminate, rather than reassign him. Instead, Byrne argues its policy allows for RIF decisions to be made by factors other than length of service, and its decisions to transfer, reassign, or layoff drivers in June 2011 were based on the routes and experience of each driver.

B.    Byrne's Practices

Similarly, the parties dispute how Byrne assigns drivers when a route becomes available. Plaintiff argues Byrne's typical practice is to allow drivers to bid for available routes, or to assign a driver who is in need of a route to an available route, with preference given based on a driver's performance. Robert Copp, Byrne's Director of Fleet Safety, and Scott Wallace, Gannon's manager, both testified this was Byrne's practice. (Parker Aff. Ex. 2 at 13; Ex. 5 at

4

26).[3]  It is undisputed Byrne did not allow drivers to bid for one of the routes that opened in June 2011.  (Parker Aff. Ex. 6 at 16).

      C.    <u>Drivers' Qualifications and Disciplinary Records</u>

The parties also dispute the two reassigned drivers' experience compared to plaintiff. Byrne contends the reassigned employees "were placed on local delivery routes which included accounts they had previously serviced" and that each had greater experience "peddling" – stocking products and collecting payments from customers – compared to plaintiff.  (Def.'s 56.1 ¶¶ 8, 9).  Defendant concedes plaintiff did have some experience peddling.  Plaintiff argues the reassigned employees did not have greater experience with the routes, arguing nothing in the reassigned drivers' personnel files reflects a greater experience with peddling, or greater experience with the accounts that became available in June 2011.

The parties dispute whether plaintiff's qualifications and disciplinary record was superior to those of the reassigned drivers.  One of the reassigned drivers received a "Critical Incident Recorder" for missing a delivery to two schools on May 4, 2011.  (Parker Aff. Ex. 1 at 14).  By contrast, plaintiff's personnel files do not contain any indications of performance problems.[4]

---

[3]      Byrne's Chief Human Resource Officer stated in a reply declaration that Byrne "does not utilize job bidding or bumping in connection with reductions in force for drivers."  (Mazza Reply Aff.).

[4]      Plaintiff filed two accident reports in 2010 and one incident report in 2010; he also received a speed warning from the New York State Thruway Authority on April 9, 2011.  (Copp. Aff. Ex. 12).  These reports and speed warning do not appear in plaintiff's personnel file (Pl.'s 56.1 Resp. ¶ 35(b)), and are not considered "disciplinary actions or warnings."  (Parker Aff. Ex. 19) (Byrne's EEOC Statement of Position, noting plaintiff had never been issued a disciplinary action or warning).

Plaintiff also cites his most recent performance review, dated March 4, 2010, in which he received many positive remarks.  One of the non-Hispanic drivers received similar praise, while the other non-Hispanic driver's personnel file does not contain a written performance review.

      D.    <u>Who Made the Decision to Terminate Plaintiff</u>

The parties also dispute who made the decision to terminate plaintiff.  Byrne argues it was Robert Copp, Byrne's Director of Fleet Safety, while plaintiff argues it was Gannon.

On June 22, 2011, Copp emailed Byrne's Human Resource Manager stating that Copp had "tasked Mike [Gannon] to reduce the manpower by three people for the summer."  (Parker Aff. Ex. 12 at 1).  Later that day, Copp emailed, "we will just lay off [plaintiff], due to the fact that his entire route has been eliminated."  (<u>Id</u>.)

On June 27, 2011, the Human Resource Manager sent Gannon plaintiff's letter of termination via email and stated, "I need to know if you plan on proceeding with [terminating another driver]."  (<u>Id</u>. at 4).  Gannon replied the other driver "will be staying at the depot, he will be assigned to route #997."  (<u>Id</u>.)  On June 28, 2011, Gannon informed plaintiff he was laid off.

Byrne's managers have provided contradictory accounts as to who decided to terminate plaintiff.  Byrne's Statement of Position to the EEOC said the decision was "made by Mr. Gannon's immediate supervisor . . . Robert Copp."  (Parker Aff. Ex. 19 at 3).  At his deposition, Copp denied making the decision to terminate plaintiff.  (Parker Aff. Ex. 2 at 5) ("Q. 'Did you make the decision to end [plaintiff's] employment?' A. 'No.' Q. 'Who made that decision?' A. 'I would – it would be – I would think my best guess would be probably Scott Wallace and Mike Gannon combined.'").  In response to follow-up questions, Copp reaffirmed he was not involved in making the RIF decisions, and that Wallace and Gannon made the decisions in conjunction with human resources.  (<u>Id</u>. at 6, 41).

Scott Wallace, Gannon's manager, testified he was not involved in the RIF decisions in June 2011 and the decisions were made by five people, including Copp and Gannon.  (Parker Aff. Ex. 5 at 63-64).  Gannon testified he had no involvement in making the decision.  (Parker Aff. Ex. 4 at 81-82).

In Byrne's moving papers, Robert Copp recanted his deposition testimony and stated he was responsible for terminating plaintiff.  (Copp Aff. ¶ 10).

IV.   Complaints to Human Resources in June 2011

In addition to plaintiff's complaint to human resources in April 2011,[5] plaintiff alleges he made two written complaints and one oral complaint to human resources in June 2011.

On June 3, 2011, plaintiff alleges he mailed a discrimination complaint to Byrne's human resources department.  Plaintiff's brother says he went with plaintiff to the post office to mail it.  Byrne claims it did not receive plaintiff's letter until after his termination.  (Parker Aff. Ex. 10 at 57).

Plaintiff called human resources on June 27, 2011, and was told that Byrne had not received his mailed complaint.  The human resources employee instructed plaintiff to send a written complaint via fax or certified letter.  The following morning, the day plaintiff was terminated, plaintiff's wife faxed a letter to human resources on plaintiff's behalf.  The faxed letter states in part, "I understand that I am different because I am Hispanic[.]  [T]here [are] a lot of difference[s] and preferences from the current supervisor.  Th[is] discrimination started when they employed the new supervisor, with his comments he makes us feel discriminated."  (Parker Aff. Ex. 22 at 3).

---

[5]   Plaintiff also complained to human resources in 2010 and in January 2011, but does not specifically state these were complaints about discriminatory treatment based on national origin.

7

IV.   <u>Offer of Reinstatement</u>

Byrne offered to reinstate plaintiff as a driver at the Newburgh Depot on July 26, 2011, and again on August 15, 2011.  Plaintiff did not accept the offers.

**DISCUSSION**

I.   <u>Summary Judgment Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>id</u>.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of her case on which she has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for her. Dawson v. Cnty. Of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider admissible evidence. Nora Bevs., Inc. v. Perrier Grp. Of Am. Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.   Byrne's Motion to Strike

Byrne moved to strike portions of plaintiff's Rule 56.1 statement, arguing plaintiff (i) failed to include proper citations to evidence with each of its counterstatements; (ii) improperly relied upon unsupported argument; and (iii) relied upon inadmissible hearsay. (Doc. #84). The Court found no need to strike the deficient portions of plaintiff's submission separately from the instant opinion and denied Byrne's motion to strike. Fed. R. Civ. P. 56(c). (Doc. #88).

The Court agrees the deficiencies Byrne identifies would render any statements in plaintiff's submission suffering from such deficiencies inadmissible. Accordingly, in deciding the instant motion, the Court has carefully considered whether a statement suffers from any of

9

the deficiencies before relying upon that statement.  See Jackson v. Fed. Exp., 766 F.3d 189, 194

(2d Cir. 2014) (noting a statement of facts "must reference admissible evidence").

III.    Discrimination Claim

        Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff brings Title VII claims based on

his national origin for (i) discrimination, (ii) hostile work environment, and (iii) retaliation.

        Under the McDonnell Douglas framework, a plaintiff must establish a prima facie case of

discrimination by demonstrating "(i) membership in a protected class; (ii) qualifications for the

position; (iii) an adverse employment action; and (iv) circumstances surrounding that action

giving rise to an inference of discrimination."  Collins v. New York City Transit Auth., 305 F.3d

113, 118 (2d Cir. 2002).  At this initial stage, plaintiff's "burden of establishing a prima facie

case is not onerous, and has been frequently described as minimal."  Norton v. Sam's Club, 145

F.3d 114, 118 (2d Cir. 1998) (internal quotation marks omitted).  After plaintiff establishes a

prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory

reason for the adverse employment action.  See United States v. Brennan, 650 F.3d 65, 93 (2d

Cir. 2011).  If the employer meets that burden, "[t]he burden then shifts back to the plaintiff to

show that [the employer's] stated reason for the adverse employment action was in fact pretext."

Id.  (quotations and alterations omitted).

        A.    Prima Facie Case and Legitimate Nondiscriminatory Reason

        Byrne argues plaintiff has not established a prima facie case of discrimination because

the decision to reassign plaintiff in April 2011 and the decision to terminate his employment in

10

June 2011 do not give rise to an inference of discrimination.  In the alternative, Byrne points to the loss of customer accounts and the need to reduce the workforce as the legitimate, nondiscriminatory reasons upon which its decisions were based.

Because plaintiff's burden at the prima facie stage is minimal, and because plaintiff does not argue Byrne failed to proffer a legitimate, non-discriminatory explanation for its adverse employment actions,[6] the Court will proceed directly to the third step of the McDonnell Douglas analysis to determine whether plaintiff has shown Byrne's legitimate reason for the adverse employment action[7] was pretext.  See Walsh v. New York City Hous. Auth., 2016 WL 3632245, at *3 (2d Cir. July 7, 2016) (adopting the "Aikens approach" when, as here, defendant did everything that would be required of it if plaintiff had properly made out a prima facie case) (citing U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)).

B.    Viewing the Evidence as a Whole

The Court must examine the entire record "just as a jury would" to see if plaintiff could persuade the trier of fact that the Byrne intentionally discriminated against plaintiff.  Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001); see Walsh v. New York City Hous. Auth., 2016 WL 3632245, at *3 ("A plaintiff's evidence at the third step of the McDonnell Douglas analysis must be viewed as a whole rather than in a piecemeal fashion.").  Taking each piece of evidence individually could lead a court to conclude there is insufficient evidence to

---

[6]    A RIF constitutes a legitimate nondiscriminatory reason for employment decisions.  See Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 111 (2d Cir. 1992).

[7]    In his opposition, plaintiff does not specifically argue his route reassignment in April 2011 was an actionable adverse employment action and focuses on the June 2011 termination. (Pl.'s Opp. at 14-19).  Also, the fact that three non-Hispanic employees were terminated in April 2011 tends to undermine the inference that plaintiff's reassignment was discriminatory. Accordingly, the Court considers plaintiff's termination in June 2011 as the sole adverse employment action for his discrimination claim.

11

permit a finding of discrimination, but when taken together, the evidence may be enough to support a jury finding of discrimination.  See Danzer v. Norden Sys., Inc., 151 F.3d 50, 57 (2d Cir. 1998).

> 1.  Discrepancy in RIF Practices and Plaintiff's Qualifications

Plaintiff argues Byrne's justification for terminating him instead of another driver was pretext, and the true reason was based in part on his national origin because (i) seniority should have been considered in determining which employees are retained under Byrne's RIF policy, (ii) Byrne did not follow its typical practice when routes became available, and (iii) plaintiff was more qualified than the non-Hispanic drivers who were reassigned to the available routes.  Byrne disputes each of these points.

Byrne argues its policy allows for a RIF to "be based on different criteria as long as done consistently."  (Def.'s Reply Br. at 4).  The policy does appear to allow Byrne to make RIF decisions based on factors other than seniority, including performance or the "loss of a customer and the impact of such a loss on a location or line of production."  (Mazza Aff. Ex. 3).

Although Byrne's written policy allowed it to make RIF decisions on factors other than seniority, plaintiff has adduced sufficient evidence to create an issue of material fact as to whether Byrne failed to adhere to its typical practices of assigning drivers to available routes, evincing an inference of discrimination.  Specifically, two management-level employees testified that Byrne typically allowed drivers to bid on available routes, and drivers' qualifications were considered in assigning the drivers.  Byrne vigorously disputes that, arguing the non-Hispanic drivers were reassigned based on their experience with the available routes and peddling.  But because Byrne did not allow drivers to bid on at least one of the available routes given to a non-Hispanic driver and did not consider the drivers' qualifications, if plaintiff's allegations about

Byrne's typical practices and his superior qualifications were credited over Byrne's, a reasonable jury could infer the decision to terminate him was based in part on national origin discrimination. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("[A]n employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision.").[8]

More fundamentally, it is not the Court's job to resolve disputed questions of fact, and the disputes themselves weigh against granting summary judgment.  See Lewis v. Blackman Plumbing Supply L.L.C., 51 F. Supp. 3d 289, 304 (S.D.N.Y. 2014); see also Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008) ("To avoid summary judgment in an employment discrimination case, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.") (internal quotation marks omitted).

2.    Discrepancy in Decision-Maker

Plaintiff argues discriminatory intent can be inferred because Gannon was the person who terminated him and Gannon had expressed bias against plaintiff based on his national origin.

The Court agrees.

Gannon need only play a "meaningful role" in the decision that resulted in plaintiff's adverse employment actions.  See Holcomb v. Iona Coll., 521 F.3d at 143 ("A Title VII plaintiff

---

[8]    Plaintiff's qualifications, standing alone, cannot carry his entire burden of showing that the decision to terminate him was made for discriminatory reasons, as the Court "must respect the employer's unfettered discretion to choose among qualified candidates."  Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 103.  Nevertheless, when viewing the evidence as a whole and in a light most favorable to plaintiff, as the Court must, plaintiff's showing that he was qualified to drive on the available routes retains some probative value as to Byrne's motivations.

is entitled to succeed, even absent evidence of illegitimate bias on the part of the ultimate

decision maker, so long as the individual shown to have the impermissible bias played a

meaningful role in the process.") (quotation marks and alteration omitted).  Here, there is

evidence from which a reasonable jury could infer Gannon played a meaningful role in the

decision to terminate plaintiff.  The person whom Byrne identifies as the true decision-maker,

Robert Copp, testified at his deposition that Gannon decided to terminate plaintiff.  Copp sent an

email stating that he "tasked" Gannon with terminating three drivers.  Each of Byrne's other

employees said Gannon was involved in the decision to terminate plaintiff.

Drawing all permissible inferences in plaintiff's favor, a reasonable jury could find

Gannon played a meaningful role in the decision to terminate plaintiff.  Because plaintiff

adduced some evidence of Gannon's bias against Hispanics,[9] Gannon's role in plaintiff's

termination is some evidence the termination was motivated in part by national origin-based

discrimination.  This conclusion is "buttressed by the familiar rule that summary judgment is

ordinarily inappropriate whereas here intent and state of mind are at issue."  Maresco v. Evans

Chemetics, Div. of W.R. Grace & Co., 964 F.2d at 113 (quotations and alterations omitted).

In sum, when viewing the evidence as a whole, there are several genuine issues of

material fact that are central to Byrne's motivation in deciding to terminate plaintiff, and

therefore summary judgment as to plaintiff's discrimination claim is not warranted.

IV.   Hostile Work Environment Claim

"In order to establish a hostile work environment claim under Title VII, a plaintiff must

produce enough evidence to show that the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of

_____

[9]      The evidence plaintiff has presented of Gannon's bias is discussed infra.

14

the victim's employment and create an abusive working environment." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted). The standard has objective and subjective elements: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014).

Byrne does not dispute plaintiff subjectively perceived his workplace as hostile, so the only issues with respect to plaintiff's hostile work environment claim are whether the alleged harassment was objectively severe or pervasive and based on plaintiff's national origin.  Courts must assess the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Raspardo v. Carlone, 770 F.3d at 114 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).

Drawing all permissible inferences in plaintiff's favor, the evidence he proffers, when considered in its totality, is sufficient to create a triable question as to plaintiff's hostile work environment claim.

Gannon's "grass cutting" comment about Mexicans is significant.  A single act can meet the threshold of sufficient severity "if by itself, it can and does work a transformation of the

plaintiff's workplace." Alfano v. Costello, 294 F.3d at 374.[10]  Byrne disputes Gannon made the comment.  This is an issue of material fact for a jury.  In any event, the Court declines to find the comment was not so severe that it could not create an abusive working environment when viewed alongside plaintiff's other allegations of Gannon's conduct.

Specifically, plaintiff contends Gannon wrongly accused plaintiff and his brother of driving infractions they did not commit, and arranged to have plaintiff's trailers to be loaded so it would be more difficult to unload the products.  These acts "affected most of the major aspects of [plaintiff's] employment," and plaintiff claims Gannon did not treat non-Hispanics in the same way.  Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 119 (2d Cir. 2010).  Byrne disputes Gannon did these things, and a jury is certainly free to disbelieve plaintiff.  But at the summary judgment stage, when taken in totality, plaintiff's allegations create a triable issue of fact as to the objective hostility of plaintiff's workplace.  See Alfano v. Costello, 294 F.3d at 377 ("[I]t may well be a proper exercise of the district court's broad discretion to allow the plaintiff to build [his] case partly by adducing incidents for which the link to any discriminatory motive may, in the first instance, appear tenuous or nonexistent.").

Although it is a close call, the Court finds plaintiff has presented enough evidence to permit a reasonable jury to infer he was subject to an objectively hostile work environment based on his national origin.  Thus, Byrne's motion must be denied.

V.     Retaliation Claim

Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids."

---

[10]     Byrne's suggestion this comment was not related to plaintiff because he is from El Salvador and not Mexico reflects a profound misapprehension of the comment's potential bias. (Def.'s Br. at 19).

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  "To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012).

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action."  Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001).  If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation."  Id. at 625.  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013).

Similar to his discrimination and hostile work environment claims, there are triable issues of material fact with respect to plaintiff's retaliation claim.

Specifically, plaintiff claims he mailed a letter to Byrne on June 3, 2011, in which he complained about discriminatory treatment by Gannon.  Because no one at Byrne acknowledges receiving or reading the letter until after plaintiff was terminated, whether Byrne knew of plaintiff's complaint before terminating him is an issue of fact for the jury.  If plaintiff and his brother are to be believed, the June 3, 2011, complaint – which was made approximately three weeks before plaintiff was terminated – is sufficient to create an issue of fact to support a causal connection between plaintiff's complaint and his termination, such that a reasonable jury could infer plaintiff was terminated due to retaliation for complaining of discrimination.  See Clark

Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("temporal proximity must be very close");

Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir.

2001) (noting the Second Circuit has declined to draw a bright line as to when the temporal

proximity is too attenuated).

And, as discussed above, whether Byrne's proffered reason for plaintiff's termination

was a pretext for discrimination is also a question of fact for the jury.  Thus, although it is again a

close call, defendant's motion for summary judgment as to plaintiff's retaliation claim is denied.

VI.    Byrne's Offer of Reinstatement

Byrne argues its liability for backpay should be tolled as of the date it unconditionally

offered to reinstate plaintiff as a driver.

The Court declines to find as a matter of law that Byrne's liability for backpay should be

tolled as of that date.

An employee terminated in violation of Title VII has a duty to attempt to mitigate his

damages by using reasonable diligence in finding other suitable employment.  See 42 U.S.C.

§ 2000e-5(g)(1).  Rejection of an unconditional offer of reinstatement forecloses any claim for

future front pay and tolls the accrual of back-pay liability under Title VII.  Ford Motor Co. v.

EEOC, 458 U.S. 219, 227 (1982).  Here, Byrne sent a letter unconditionally offering to reinstate

plaintiff as a driver on July 26, 2011, and a follow-up offer on August 15, 2011.  See Miano v.

AC & R Advertising, Inc., 875 F.Supp. 204, 221 (S.D.N.Y. 1995) ("[A]n offer of reinstatement

is understood to be unconditional where the discharged employee is not required to compromise

his claims against the defendant as a prerequisite to returning to work.").

Neither party disputes plaintiff rejected the offers.  Instead, plaintiff argues his rejection

was reasonable because (i) he suffered from an injury and was not physically able to perform the

same job as before, and (ii) he would have been subject to a harassing environment under

Gannon if he accepted the offer.  These arguments appear tenuous.  See, e.g., Robles v. Cox &

Co., 154 F. Supp. 2d 795, 808 (S.D.N.Y. 2001) (plaintiff's assertion that returning to work would

cause mental anguish because defendant employed friends of the harasser was insufficient to

excuse rejection of an offer of reinstatement).  However, "it is the duty of the trier of fact to

weigh the evidence to determine whether a reasonable person would refuse the offer of

reinstatement."  Pierce v. F.R. Tripler & Co., 955 F.2d 820, 830 (2d Cir. 1992).  Given that

plaintiff's Title VII claims will proceed to trial, the Court denies Byrne's application to toll

defendant's backpay liability and defers that question to the province of the jury.

## CONCLUSION

Defendant's motion for summary judgment is DENIED.

The Clerk is instructed to terminate the motion.  (Doc. #64).

Counsel are directed to submit a Joint Pretrial Order in accordance with the Court's

Individual Practices by September 30, 2016, and to appear for a pretrial conference on October

12, 2016, at 9:30 a.m., at which time the Court will set a trial date.

Dated: August 31, 2016
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge